# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Linda McCormick,

               Plaintiff,         Case No. 14-cv-12801

v.                            Judith E. Levy
                             United States District Judge

Oakwood Healthcare Inc., City of
Taylor, Brian Wojtowicz, Adam           Mag. Judge David R. Grand
Leffew, Jennifer Zuccaro, and
Steve Porta,

               Defendants.

_____/

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO GRANT CORRECTIONS [111], GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE INDEX [115], DENYING PLAINTIFF'S MOTION FOR ORDER TO COMPEL [114], GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [86, 87], AND DENYING PLAINTIFF'S MOTION TO AMEND [83]

Plaintiff Linda McCormick brought suit against defendants Oakwood Healthcare Inc. (defendant Oakwood) and the City of Taylor and Taylor Police Officers Brian Wojtowicz, Adam Leffew, Jennifer Zuccaro, and Steve Porta (the City Defendants), for events that took place in April 2014 at Oakwood Heritage Hospital, where plaintiff's

mother was hospitalized. After discovery, plaintiff filed a motion to amend the complaint to add new defendants (employees or former employees of defendant Oakwood) and new claims. (Dkt. 83.) Shortly thereafter, defendant Oakwood and the City Defendants filed motions for summary judgment. (Dkt. 86; Dkt. 87.) Plaintiff filed responses (Dkt. 95; Dkt. 108; *see also* Dkt. 110), as well as several miscellaneous motions in support of her responses. (*See* Dkt. 111 (motion to grant corrections); Dkt. 115 (motion for leave to file index); *see also* Dkt. 114 (motion for order to compel).) For the reasons set forth below, plaintiff's motions to grant corrections and for leave to file index are granted, plaintiff's motion for order to compel is denied, defendants' motions for summary judgment are granted, and plaintiff's motion for leave to amend is denied.

## I.  Background

In early April 2014, plaintiff's mother, Mary Griffith, underwent elective shoulder surgery at Oakwood Heritage Hospital. (Dkt. 87-3 at 11.) According to nursing notes on April 7, 2014, taken a few days after the surgery, while Griffith was still admitted, Griffith was "alert and agitated" and "calling out loudly[,] oriented to self[,] but unable to

[f]ocus on necessary treatment." (Dkt. 87-4 at 4.) After she "remov[ed her] oxygen," Griffith was given Haldol, and antipsychotic medication. (*See id.*) At approximately 10:30 PM that same day, plaintiff called Oakwood to ask how her mother was doing and "became angry and belligerent" when told that Haldol had been administered to Griffith. (*Id.*)

Plaintiff went to Oakwood and stated that, as Griffith's power of attorney, she wanted Griffith transferred to Henry Ford Hospital. (*See id.* at 3-4.) Plaintiff spoke with Griffith's treating physician, Dr. Wayel Katrib, on the phone, who notified plaintiff that her mother could be transferred the following morning. (*Id.* at 3.) Plaintiff told the Oakwood staff that they were all fired and that she was leaving with her mother immediately. (*Id.*) Plaintiff attempted to remove her mother from the hospital but was prevented from doing so by an Oakwood security guard. (*Id.*; Dkt. 87-5 at 2.) The police were called at approximately 12:30 AM on April 8, 2014. (*Id.*)

Taylor Police Officers Brian Wojtowicz and Adam Leffew were dispatched to the hospital, where hospital staff informed them that plaintiff had been told it was unsafe for Griffith to leave the hospital at

3

that time, but that Griffith could be transferred in the morning. (Dkt. 87-7 at 2-3; Dkt. 87-8 at 2-3.) The officers testified that plaintiff was irate and had attempted to remove intravenous lines from Griffith. (Dkt. 87-7 at 3; Dkt. 87-8 at 3.) Once the officers spoke to plaintiff and she agreed not to interfere with Griffith's care, she was allowed to remain at the hospital, and the officers left. (Dkt. 87-7 at 3; Dkt. 87-8 at 3.)

Plaintiff states in an affidavit that when the police arrived, she "was not disturbing anyone," and informed the officers that Griffith "was being held against her will" and that Griffith herself informed the officers that "she wanted [to be] transferred and did not want Oakwood to treat her." (Dkt. 108 at 6-7 (citing Dkt. 110-8).) According to plaintiff, defendant officer Wojtowicz "accus[ed p]laintiff of touching the medical equipment," but she "denied ever touching any medical equipment" and stated "that both the doctor and nurses had told [p]laintiff [that Griffith] was stable and ready for discharge." (*Id.*)

Approximately one hour later, hospital staff again called the police. (Dkt. 87-10.) According to the 911 transcript, hospital staff stated that plaintiff was "verbally attacking the nurses and [] need[ed]

4

to be removed." (*Id.* at 3.)   The nurses were unable to continue Griffith's care because of the interference. (*Id.*)  According to plaintiff, the "second call to the police was again for improper purposes." (Dkt. 108 at 8.)

When the officers arrived back at the hospital shortly after the second 9-1-1 call, hospital staff advised them that plaintiff was again interfering with Griffith's medical treatment, and a hospital security guard informed plaintiff several times that she needed to leave the premises. (Dkt. 87-7 at 4; Dkt. 87-8 at 4; Dkt. 87-9 at 4; Dkt. 87-11 at 3.)  Plaintiff refused to leave. (Dkt. 87-7 at 4; Dkt. 87-8 at 4; Dkt. 87-9 at 4; Dkt. 87-11 at 3.)

Plaintiff claims that she "had not said a word to anyone," and had merely "returned to her mother's bedside." (Dkt. 108 at 8.)   She "professed her innocence but [officer] Wojtowicz refused to believe her, look at the [security footage,] or investigate," and ordered that she "need[ed] to leave." (*Id.*)  Plaintiff argues this was improper because the hospital "was private property that [officer Wojtowicz] did not own." (*Id.* at 8-9.)   Plaintiff states in her affidavit that she told officer

Wojtowicz, "I don't want to argue with you, then I will leave." (*Id.* at 9 (citing Dkt. 110-8; Dkt. 110-10).)

The officers instructed plaintiff to leave the hospital premises at least three times (which plaintiff seems to agree with (Dkt. 108 at 8)), but, according to the officers, she refused, stating that she knew her rights and would not do so. (Dkt. 87-7 at 4; Dkt. 87-8 at 4; Dkt. 87-9 at 4; Dkt. 87-11 at 3.) Officer Wojtowicz then informed plaintiff she was under arrest for trespassing. (Dkt. 87-7 at 4; Dkt. 87-8 at 4; Dkt. 87-9 at 4; Dkt. 87-11 at 3.)

According to the City Defendants, instead of cooperating with the officers, plaintiff "yanked her arm back and slid to the floor in order to prevent [herself from] being handcuffed," and "began screaming, curled her arms underneath her body, and refused to provide them to the officers." (Dkt. 87 at 14 (citing Dkt. 87-7, Dkt. 87-8; Dkt. 87-9; Dkt. 87-11).) The officers state in their affidavits that "[n]o strikes or compliance blows were ever delivered to [p]laintiff," and due to plaintiff's refusal to stand and walk, the officers had to carry plaintiff through the hospital and eventually wheel her out in a wheelchair. (*Id.*)

She "refused" when "instructed to get in the [police] car," so she was "placed on her stomach in the backseat." (*Id.*) Once plaintiff was turned over for processing at the station, officer Jennifer Zuccaro searched plaintiff. (*Id.*) The officers testified that plaintiff "did not have any visible injuries and never complained of any injuries" prior to being turned over for booking. (*Id.* (citing Dkt. 87-7, Dkt. 87-8; Dkt. 87-11).) Plaintiff was issued a misdemeanor citation for trespassing and interference with police authority stemming from her refusal to leave, resisting arrest, and refusal to follow commands. (*Id.* at 14-15 (citing Dkt. 87-13).)

Citing her own affidavit, plaintiff declares that officer Wojtowicz "grabbed [her] left arm, stomped on [her] foot[,] and slammed [her] to the ground," and never stated that plaintiff was under arrest. (Dkt. 108 at 9 (citing Dkt. 110-8; Dkt. 110-11).) She "was then punched in the back" and "kicked [] in the hip." (*Id.*) She was "slammed into a wheel chair," "harshly thrown into" the back of the patrol car, "dragged out of the car by her feet" when they reached the station, and complained that her "back and shoulder w[ere] hurt and she needed medical attention."

7

(*Id.*)  According to plaintiff, her complaints of pain were met with taunts from officers during booking.  (*Id.* at 10.)

Plaintiff was arraigned on April 8, 2014, the same day she was booked.  (Dkt. 87-15 (citing 87-17).)  She pled not guilty and was given the opportunity to be represented by a court-appointed attorney.  (*Id.*) The judge set plaintiff's bond at $2500, which was posted by Barbara Fisher.  (*Id.* (citing 87-18.)  A settlement conference was held on April 29, 2014, and based on defendant Oakwood's request that the matter be dismissed, the charges were dropped.  (*Id.* at 15-16 (citing 87-20).)  The trial court ordered that plaintiff stay out of Oakwood Heritage Hospital except for emergency purposes.  (*Id.*)

During this time, a social worker representing defendant Oakwood filed a petition in Michigan Probate Court for Appointment of a guardian and initiated a probate proceeding.  (Dkt. 87-21.)  Griffith's treating physician felt it necessary to remove her from plaintiff's care and to place Griffith in a nursing home for her safety, at least until Adult Protective Services could "substantiate any abuse and/or neglect" caused by plaintiff "at home."  (Dkt. 87-22.)  The petition was granted,

and the probate court ordered a temporary guardian for Griffith, whose authority remained in effect until her death.  (*See* Dkt. 86 at 17.)

Plaintiff brought six claims in her original complaint against defendant Oakwood and the City Defendants: Count I § 1983 for violation of her Fourth Amendment rights; Count II false arrest; Count III false imprisonment; Count IV intentional infliction of emotional distress; Count V battery; and Count VI malicious prosecution.  (Dkt. 1.)

Over one year after filing her original complaint, and on the eve of the dispositive motions deadline, plaintiff filed a motion to amend, seeking to add additional claims: Count VII intentional interference with plaintiff's authority as patient advocate-health care power of attorney and Count VIII defamation.  (Dkt. 83-1.)  She also seeks to add Dr. Wayel Katrib, Bethany Nalepka, and Janet Stevens, all current or former individual employees of defendant Oakwood.  (*Id.*)

## II.  Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court may not grant summary judgment if "the evidence is such that a reasonable

9

jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (citing *Skousen v. Brighton High Sch.,* 305 F.3d 520, 526 (6th Cir. 2002)).

## III.   Analysis

### a. Section 1983 claim

To establish a claim pursuant to 42 U.S.C. § 1983, a plaintiff "must identify a right secured by the United States Constitution and the deprivation of that right by a person acting under color of state law." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992). Put differently, a plaintiff must provide sufficient evidence to show that (1) the conduct at issue was under color of state law, (2) the conduct caused a deprivation of a constitutional right, and (3) the deprivation occurred without due process of law.  *Nishiyama v. Dickson Cty.*, 814 F.2d 277, 279 (6th Cir. 1987).  Plaintiff claims that all defendants, acting under color of state law, violated the Fourth Amendment because

10

they "never had probable cause to arrest, seize, hold[,] or otherwise restrain" her. (Dkt. 1 at 4.)

"It is a well-settled principle of constitutional jurisprudence that an arrest without probable cause constitutes an unreasonable seizure in violation of the Fourth Amendment." *See Ingram v. City of Columbus*, 185 F.3d 579, 592-93 (6th Cir. 1999). To establish a § 1983 claim of unlawful seizure under the Fourth Amendment, a plaintiff must prove that the arresting officer lacked probable cause to arrest her. *Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005); *see Wallace v. Kato*, 549 U.S. 384, 388 (2007) (claims of false arrest and false imprisonment under § 1983 overlap, with false arrest being a "species" of false imprisonment, and "[e]very confinement of the person is an imprisonment") (quotation omitted).

Defendant Oakwood argues that, as a private entity, it did not act under color of state law for purposes of a § 1983 claim. (Dkt. 86 at 18-20.) Plaintiff responds that defendant Oakwood's security personnel are clothed with state authority to make an arrest. (Dkt. 95 at 29-30.) But even accepting that as true, plaintiff fails to establish that any Oakwood employee violated plaintiff's Fourth Amendment rights.

Only when one acting under color of law, "by means of physical force or show of authority, has in some way restrained the liberty of a citizen may" the Court "conclude that a 'seizure' has occurred" for purposes of a § 1983 claim. *See Terry v. Ohio,* 392 U.S. 1, 19 n.16 (1968). This is measured under an objective standard—a "seizure occurs if 'in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *Brendlin v. California*, 551 U.S. 249, 255 (2007) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)).

Plaintiff does not argue and does not present evidence that any employee of defendant Oakwood actively helped the police to arrest her. Thus, plaintiff cannot establish that any employee of defendant Oakwood seized plaintiff within the meaning of the Fourth Amendment.

Moreover, plaintiff's argument that defendant Oakwood "falsely imprisoned [p]laintiff because due to Oakwood's improper conduct[,] she had to remain in the hospital to protect her mother and over see her care and could not leave" is meritless. No reasonable person under the circumstances would have felt they were not free to leave. In fact, plaintiff states that she thought she could leave of her own free will

12

before officer Wojtowicz arrested her.  (*See* Dkt. 108 at 14.)    Because plaintiff has not set forth sufficient evidence to establish that any employee of defendant Oakwood seized her, plaintiff's § 1983 claim as to Oakwood must be dismissed.

The City Defendants do not dispute that they seized plaintiff. Rather, they argue that they had probable cause to arrest her and, alternatively, that they are protected by qualified immunity.  (Dkt. 87 at 16-21.)  According to them, "[p]laintiff refused to comply with the [officers'] requests and commands to leave the property," thereby committing "a misdemeanor in the officers' presence" sufficient to justify arrest.  (*Id.*)  Plaintiff responds that she did not say she would not leave, and was never told that she was under arrest. (Dkt. 108 at 14.)   Rather, according to her, she attempted to follow officer Wojtowicz's command to leave but was "sucker attac[k]ed" so that she could not comply.  (*Id.*)

"[W]hen an officer has probable cause to believe a person committed even a minor crime in his presence, . . . . [t]he arrest is constitutionally reasonable."  *Virginia v. Moore*, 553 U.S. 164, 171 (2008).  "[A]n objective finding of probable cause is an absolute defense

to liability for a wrongful arrest claim." *United States v. Sease*, 659 F.3d 519, 525 n.1 (6th Cir. 2011).

Even accepting all of plaintiff's evidence as true (here, her own affidavits), plaintiff was witnessed trespassing in the officers' presence, and thus probable cause existed to arrest her.  Plaintiff does not dispute that the hospital security guard, in front of the officers, told her that she needed to leave, or that the hospital nurses told the officers that she had been interfering with their ability to treat Griffith.   Moreover, plaintiff herself states that officer Wojtowicz told her that she "need[ed] to leave." (Dkt. 108 at 8.)

Instead, she argues that officer "Wojtowicz accepted mere hearsay of the nurses['] false allegations without any reasonable investigation." (Dkt. 108 at 14.)   Even if she "professed her innocence [to officer] Wojtowicz," who then "refused to believe her, look at the [security footage,] or investigate" (*id.* at 8), the officers objectively had probable cause to arrest her based on the hospital staffs' statements and the officers' own observations.   Faced with hospital staff allegations that plaintiff was interfering with Griffith's treatment and having witnessed hospital security tell plaintiff that she needed to leave the hospital, the

14

officers objectively had probable cause to arrest plaintiff whether or not she said she would comply.  For this reason, the claim is dismissed as to the City Defendants as well.

Relatedly, the Court notes that although plaintiff uses the term "excessive force" at various times in her responses, she did not plead it in her § 1983 claim.  But even if she had, it would be denied for the same reasons as plaintiff's battery claim is denied below.  *See generally Wells v. City of Dearborn Heights*, 538 F. App'x 631, 641 n.3 (6th Cir. 2013) (noting that "[i]t appears that Michigan courts do indeed view the" § 1983 excessive[ ]force and battery under Michigan tort law "standards as equivalent").

### b. False arrest claim

To establish a claim of false arrest under Michigan law, a plaintiff must show that the arrest was illegal or unjustified.  *Peterson Novelties, Inc. v. City of Berkley*, 259 Mich. App. 1, 18 (2003) (citing *Lewis v. Farmer Jack Div., Inc.*, 415 Mich. 212, 218 (1982)).  "To prevail on a claim of false arrest, a plaintiff must show that the arrest was not legal, i.e. the arrest was not based on probable cause."  *Id.*  Under Michigan law, "probable cause to arrest exists where the facts and circumstances

15

within an officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been committed or is being committed." *Hinchman v. Moore*, 312 F.3d 198, 204 (6th Cir. 2002) (quoting *People v. Champion*, 452 Mich. 92, 115 (1996)).

For the same reasons that plaintiff's § 1983 claim fails, plaintiff's state law claim of false arrest also fails. Plaintiff has not established that any employee of defendant Oakwood seized her. And the City Defendants objectively had probable cause to arrest her. Thus plaintiff's state claim of false arrest is dismissed.

### c. False imprisonment claim

To establish a claim of false imprisonment under Michigan law, a plaintiff must show that defendants "participated in an illegal and unjustified arrest, and that [the defendants] lacked probable cause to do so." *Bletz v. Gribble*, 641 F.3d 743, 758 (6th Cir. 2011) (quoting *Walsh v. Taylor*, 263 Mich. App. 618, 626 (2004)). "The elements of false imprisonment are (1) an act committed with the intention of confining another, (2) the act directly or indirectly results in such confinement,

16

and (3) the person confined is conscious of his confinement." *Id.* (quoting *Walsh*, 263 Mich. App. at 627).

For the same reasons that plaintiff's § 1983 and false arrest claims were dismissed, plaintiff's false imprisonment claim must also be dismissed. *See, e.g.*, *Wilkerson v. Warner*, 545 F. App'x 413, 434 (6th Cir. 2013) ("Because we find that [defendant] had reasonable suspicion and probable cause to detain [plaintiff] when he did so, we affirm the district court's dismissal of plaintiff's false imprisonment claim.").

### d. Intentional infliction of emotional distress claim

To establish a claim of intentional infliction of emotion distress, a plaintiff must show "(1) 'extreme and outrageous' conduct; (2) intent or recklessness; (3) causation; and (4) 'severe emotional distress.'" *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 602 (1985).

"It is initially for the trial judge to decide whether defendant's conduct might reasonably be regarded as so extreme and outrageous as to allow recovery for intentional infliction of emotional distress." *Sawabini v. Desenberg*, 143 Mich. App. 373, 383 (1985). To establish outrageousness, plaintiff must show facts that "to an average member of the community" would "arouse his resentment against the actor, and

17

lead him to exclaim, 'Outrageous!'" *See Roberts*, 422 Mich. at 603. Plaintiff must specify the disputed outrageous conduct. *Mino v. Clio Sch. Dist.*, 255 Mich. App. 60, 80 (2003).

The outrageous conduct plaintiff describes in her responses is that "[a] person," Griffith, "was kidnapped and killed all because of all [d]efendant[s'] willful lies." (Dkt. 108 at 26.) She argues that defendants "torture[d] . . . her mother," and that she "had to endure seeing her mother mistreated and slowly killed for [eleven] months." (*Id.*) According to plaintiff, it "is extreme and outrageous and shocking that a[n] entity could kidnap a person, drug them with severe psych drugs [Griffith] had never had before, for the improper purpose of incapacitating her to ensure a[n] unfavorable report from a [guardian ad litem]." (*Id.*)

As to the City Defendants, plaintiff has not set forth sufficient evidence to show that they were responsible for the conduct that allegedly caused her severe emotional harm. The evidence does not in any way show that the officers tortured Griffith, seized her, or administered any drugs to her. Separately, she argues that she was "falsely arrested" and "laid in jail not knowing if her mother was dead

or alive" (Dkt. 95 at 31-32), but because the officers were justified in arresting her, that is not sufficient conduct to be considered extreme and outrageous.

As to defendant Oakwood, plaintiff does not set forth sufficient evidence to support what she perceived as kidnapping or torture for what she argues was the purposeful interference with her Power of Attorney. Plaintiff attaches many exhibits to her responses from Griffith's medical records. But she fails to articulate how any of them support her allegations. Because plaintiff fails to establish outrageousness as to any defendant, her IIED claim is dismissed.

### e. Battery claim

To establish a claim of battery under Michigan law, a plaintiff must show a "wilful [*sic*] and harmful or offensive touching of another person which results from an act intended to cause such a contact." *VanVorous v. Burmeister*, 262 Mich. App. 467, 482-83 (2004) (quotation omitted). Touching is an essential element of the tort. *See Kolley v. Adult Protective Servs.*, 786 F. Supp. 2d 1277, 1297 (E.D. Mich. 2011).

Plaintiff sets forth no evidence that any employee of defendant Oakwood impermissibly touched her. Rather, she argues that the

19

alleged injuries caused by the officers is "attributable" to Oakwood, but
still fails to establish what an employee of Oakwood did to make it so.

As to the City Defendants, plaintiff has not set forth sufficient
evidence to establish a "harmful or offensive" touching, only a
legitimate one.  When a defendant "use[s] reasonable force to effect [a]
lawful arrest of [a] plaintiff, the plaintiff's assault and battery claims
cannot withstand summary judgment."  *Sterling-Ward v. Tujaka*, 414 F.
Supp. 2d 727, 742 (E.D. Mich. 2006) (citing *Kahlich v. City of Grosse
Pointe Farms*, 120 F. App'x 580, 586 (6th Cir. 2005)).

The only evidence that plaintiff sets forth is her own affidavit, in
which she claims that she was stomped on, kicked, punched, and
otherwise beaten by the officers.  It is not just that her affidavit is
contrary to every other account in the case.  As noted by the City
Defendants, the only medical records provided by plaintiff show that
she "sought treatment for shoulder pain that she claims occurred as a
result of" the arrest "more than [fifteen] months after the alleged
'injury' and" within a week of her deposition.  (*See* Dkt. 87 at 25-26
(citing Dkt. 87-26; Dkt. 87-27).)  She later returned for a follow-up visit.
(*See id.*)  She testified in her deposition that these are the only two

20

times she sought medical attention related to her alleged injuries from the arrest.  (*Id.* at 26 (citing Dkt. 87-3 at 22).)

No reasonable juror could find for plaintiff based on this "mere scintilla" of evidence—two records from visits to the doctor, which show very little, within days of her deposition yet more than a year after the alleged injury.  *See Stratford v. Merlo*, No. 12-CV-13013, 2013 U.S. Dist. LEXIS 105547, at *19-20 (E.D. Mich. July 29, 2013) (granting defendant summary judgment when plaintiff's "eleventh-hour statements at his deposition" were "not supported by any evidence in the record"); *Mohamud v. Johnson*, No. C08-1833-JCC, 2009 U.S. Dist. LEXIS 133407, at *5-6 (W.D. Wash. Nov. 19, 2009) (summary judgment for officer because plaintiff's only evidence of excessive force was his uncorroborated testimony that plaintiff had been kneed in back, kicked in right hip, and struck four times in face and ribs).  This claim is therefore dismissed.

### f. *Malicious prosecution claim*

To establish a claim of malicious prosecution under Michigan law, a plaintiff must show that (1) defendants initiated a criminal prosecution against her, (2) the criminal proceedings terminated in her

favor, (3) the private entity who instituted or maintained the prosecution lacked probable cause for its actions, and (4) the action was undertaken with malice or a purpose in instituting the criminal claim other than bringing the offender to justice. *Walsh v. Taylor*, 263 Mich. App. 618, 632-33 (2004). When termination "results from a compromise or settlement or is brought about by an action of the accused as a courtesy or favor or by some act of the accused that prevents the litigation, there is no favorable termination that will serve as a basis for a cause of action for malicious prosecution." *Cox v. Williams*, 233 Mich. App. 388, 394 (1999).

Here, the criminal proceedings against plaintiff were terminated after the parties mutually agreed to dismiss the charges. (*See* Dkt. 87-19; Dkt. 87-20.) Thus, plaintiff cannot establish the second element of the claim. *See Cox*, 233 Mich. App. at 394.

But even assuming that she could, plaintiff has not set forth sufficient evidence to support her argument that defendants acted with malice. "Malice" is "a purpose other than that of securing the proper adjudication of the claim." *Payton v. City of Detroit*, 211 Mich. App. 375, 395 (1995). Plaintiff argues that defendant Oakwood intended to

22

retaliate against her for having an "anti Heritage sign," and thus "lied and falsified records to pursue her false arrest." (Dkt. 95 at 22.) According to plaintiff, this was so that defendant Oakwood could "get her out of the way to falsely imprison her mother and illegally obtain an ex parte appointment of a temporary guardian." (*Id.*) None of the evidence, except her conclusory statements in her affidavits, supports this speculation.

As to the City Defendants, plaintiff argues that they worked with defendant Oakwood to bring "about the false charges" and that officer Wojtowicz "wrote a report willfully omitting critical facts" to "make it appear that she was a horrible person attacking her mother." (Dkt. 108 at 18.) Plaintiff speculates that "[i]t is reasonable that the charges may have been dismissed at her arraignment if Wojtowicz had not omitted critical facts." (*Id.*) But as set forth above, the City Defendants, even accepting that they relied on "the nurses['] statements [that] were hearsay and denied by [p]laintiff" (Dkt. 108 at 18-19), had probable cause to arrest and later arraign plaintiff.

Plaintiff's claim is dismissed because she cannot establish that "the criminal proceedings terminated in her favor" given the mutual

agreement to dismiss the case. *Cox*, 233 Mich. App. at 394. Even if she could, she fails to set forth any evidence to establish that defendant Oakwood or the City Defendants acted with malice, that is, "a purpose other than that of securing the proper adjudication of the claim." *Payton*, 211 Mich. App. at 395.

### g. Motion to amend complaint

Over one year after filing her original complaint, and on the eve of the dispositive motions deadline, plaintiff filed a motion to amend, seeking to add additional claims: Count VII intentional interference with plaintiff's authority as patient advocate-health care power of attorney and Count VIII defamation. (Dkt. 83-1.) She also seeks to add Dr. Wayel Katrib, Bethany Nalepka, and Janet Stevens, all current or former employees of defendant Oakwood Healthcare, Inc., as defendants. (*Id.*) This is plaintiff's second attempt to file an amended complaint, the first having been denied after a hearing. (*See* Dkt. 57.)

Plaintiff's motion to amend is denied for several reasons. First, the proposed amendment is nearly identical to the one from March 2015 that the Court previously denied plaintiff leave to enter. It seeks to add the same parties, the same two counts, and the same supporting

24

allegations.  (*Compare* Dkt. 33-1 *with* Dkt. 83-1.)  For the same reasons the first motion to amend was denied, the Court denies this one.

Second, plaintiff fails to demonstrate "good cause" under Rule 16 why the schedule should be modified.  *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.").  "Once the scheduling order's deadline passes, a plaintiff first must show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)." *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003).  An "important consideration for a district court deciding whether Rule 16's 'good cause' standard is met is whether the opposing party will suffer prejudice by virtue of the amendment." *Id.*

The scheduling order entered in this case provided for a cutoff of November 15, 2014, to amend the pleadings.  (Dkt. 19.)  Both of plaintiff's motions to amend came after that time.  The one at issue here was filed on October 28, 2015 (Dkt. 83), nearly one year after the deadline in the scheduling order had passed.  In her reply, plaintiff argues that good cause is shown because the attorney for defendant

Oakwood misled her regarding the individual defendants she seeks to add.  (Dkt. 89 at 6-7.)

But as highlighted by defendant Oakwood, plaintiff was aware of their identities even before the commencement of this litigation.  (Dkt. 84 at 7-8.)  And the two claims plaintiff seeks to add to the complaint are based on information that plaintiff knew before the filing of the complaint.   Moreover,  defendants  would  be  prejudiced  by  the amendment.   Discovery  had  passed  and  the  dispositive  motions deadline was imminent when plaintiff filed the motion.   *See, e.g.*, *Edwards v. Grand Rapids Cmty. Coll.*, No. 1:09-cv-1067, 2010 U.S. Dist. LEXIS 52340, at *7-8 (W.D. Mich. May 27, 2010) ("Prejudice to the defendants in these circumstances is patent.  Plaintiff seeks to upset the orderly progress of this case towards resolution by injecting claims against four new defendants sixty days before the close of discovery."). Because plaintiff was "obviously aware of the basis of the claim for many  months"  before  the  deadline  for  amended  pleadings  and defendants  would  be  prejudiced  at  this  point,  plaintiff's  motion  is denied.  *See Leary*, 349 F.3d at 908.

26

## IV.   Conclusion

To fully consider defendants' motions for summary judgment, plaintiff's motion to grant corrections (Dkt. 111) is GRANTED, and plaintiff's motion for leave to file index (Dkt. 115) is GRANTED. However, plaintiff's motion to compel (Dkt. 114) is DENIED, because plaintiff was given the opportunity to view the records sought in the motion but did not exercise it and otherwise has possession of the full copy of the records.  (*See* Dkt. 69.)

The Court has had a great deal of involvement with this case. Hearings have been held on various motions, and the plaintiff's deposition was convened at the Court so the undersigned could rule on objections and assist the parties in proceeding with the deposition in an effective manner.   One thing is clear.   Plaintiff feels deeply that defendants caused her mother's death and subjected plaintiff to aggravation when she tried to save her mother's life.  Unfortunately, given the evidence presented, this case is not the appropriate vehicle for addressing these concerns.

For the reasons set forth above, defendants' motions for summary judgment (Dkt. 86; Dkt. 87) are GRANTED, and plaintiff's motion to amend (Dkt 83) is DENIED.

IT IS SO ORDERED.

Dated: November 17, 2016       s/Judith E. Levy
Ann Arbor, Michigan       JUDITH E. LEVY
         United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 17, 2016.

     s/Felicia M. Moses
     FELICIA M. MOSES
     Case Manager